Howet, Judge,
delivered the opinion of the court:
This action is for tbe recovery of taxes alleged to have been unlawfully collected under tbe act of June 30, 1898, 30 Stat., 448, as amended by tbe act of March 2, 1901, 32 Stat., 964, known as the Spanish War revenue act. After tbe filing of the original and an amended petition, defendants demurred upon the ground that neither petition alleges sufficient facts to constitute a cause of action. On tbe final hearing tbe parties moved tbe court for permission to file an agreed statement of facts, and this motion was allowed. Treating tbe demurrers as withdrawn and abandoned, the court makes the findings as agreed to by tbe parties and now disposes of tbe case on tbe merits.
Adelaide P. Dalzell, a widow and resident of Pittsburgh, Pa., died June 28,1902, intestate, leaving as her sole next of bin her two daughters, each of whom is still living. Proceedings were had in a local court having jurisdiction over the estate of the deceased, and letters of administration were issued to . the plaintiff, who qualified as administrator and took possession of the personal property. The statutes of Pennsylvania under which possession was taken provided that “no admisitrator shall be compelled to make distri *416 bution of the goods of an intestate until one year be fully expired from the granting of the administration of the estate.” Act 24th Feb., 1834, sec. 38, P. L. 80, Purd., 447.
Under the local law in force at the time of the death of the deceased her daughters were entitled each to receive one-half of the net personal estate after the payment of all debts and charges for which the estate might be legally liable. The debts and charges were ascertained and paid by the administrator. After their payment the net personal estate amounted to $219,341.74. The personal estate remained in the exclusive possession and control of the administrator until May 4, 1903, when the assets were distributed. But in October, 1905, the collector of internal revenue, acting for and on behalf of the United States, and assuming to act under the provisions of the act of Congress approved June 13, 1898, entitled “An act to provide ways and means to meet war expenditures, and for other purposes,” 30 Stat., 448, and amendments thereto approved March 2, 1901, 31 Stat., 938, collected from the administrator $3,290.12, claiming the same to be lawfully assessed and payable on account of the interests of the two surviving daughters. The sum stated was paid by the administrator to the collector without protest and placed in the Treasury. Subsequently, in May, 1906, the administrator applied for a refund of the amount of the tax. No action was taken upon this application, but on November 21, 1908, a letter was addressed to the Commissioner of Internal Bevenue, pursuant to regulations, as follows: “We also have the honor to request the action of the Secretary of the Treasury upon this claim” — predicating the application upon the fact that the distributees of the estate whose interests were taxed were not entitled to receive into their possession their distributive shares -until after the expiration of one year from the date of the grant of letters of administration and that such taxes were refundable under the act of Congress approved June 27, 1902, 32 Stat., 406. The Secretary of the Treasury rejected the application and this action is the result.
*417 Section 29 of the act of June 13, 1898, 30 Stat., 448, and under which the tax was collected, provides as follows:
“ That any person or persons having in charge or trust, as administrators, executors, or trustees, any legacies or distributive shares arising from personal property, where the whole amount of such personal property as aforesaid shall exceed the sum of ten thousand dollars in actual value, passing, after the passage of this act, from any person possessed of such property, either by will or by the intestate laws of any State or Territory, or any personal property or interest therein, transferred by deed, grant, bargain, sale, or gift, made or intended to take effect in possession or enjoyment after the death of the grantor or bargainer, to any person or persons, or to any body or bodies, politic or corporate, in trust or otherwise, shall be, and hereby are, made subject to a duty or tax, to be paid to the United States, as follows— that is to say: Where the whole amount of said personal property shall exceed in value ten thousand dollars and shall not exceed in value the sum of twenty-five thousand dollars the tax shall be:
“ First. Where the person or persons entitled to any beneficial interest in such property shall be the lineal issue or lineal ancestor, brother, or sister to the person who died possessed of such property, as aforesaid, at the rate of seventy-five cents for each and every hundred dollars of the clear value of such interest in such property.
‡ tfc ‡ % sf* #
“ Fifth. Where the person or persons entitled to any beneficial interest in such property shall be in any other degree of collateral consanguinity than is hereinbefore stated, or shall be a stranger in blood to the person who died possessed, as aforesaid, or shall be a body politic or corporate, at the rate of five dollars for each and every hundred dollars of the clear value of such interest: Provided, That all legacies or property passing by will, or by the laws of any State or Territory, to husband or wife of the person died possessed, as aforesaid, shall be exempt from tax or duty.”
The above section was amended by act approved March 2, 1901, 31 Stat., 938, 947, by adding a proviso to the effect that the section should not be held applicable to bequests or legacies for uses of a religious, literary, charitable, or educational character, nor should it apply to the estate of any person who died prior to June 13, 1898, the date when section 29 first went into effect.
*418 Section 29 as amended was repealed, to take effect on July 1,1902, by an act approved April 12,1902, 32 Stat., 96, 97.
On June 27, 1902, the President approved an act entitled “An act to provide for refunding taxes paid upon legacies and bequests,” etc., 32 Stat., 406, tbe third section of which is as follows:
“That in all cases where an executor, administrator, or trustee shall have paid, or shall hereafter pay, any tax upon any legacy or distributive share of personal property under the provisions of the act approved June thirteenth, eighteen hundred and ninety-eight, entitled ‘An act to provide ways and means to meet war expenditures, and for other purposes,’ and amendments thereof, the Secretary of the Treasury be, and he is hereby, authorized and directed to refund, out of any money in the Treasury not otherwise appropriated, upon proper application being made to the Commissioner of Internal Kevenue, under such rules and regulations as may be prescribed, so much of said tax as may have been collected on contingent beneficial interests which shall not have become vested prior to July first, nineteen hundred and two. And no tax shall hereafter be assessed or imposed under said act approved June thirteenth, eighteen hundred and ninety-eight, upon or in respect of any contingent beneficial interest which shall not become absolutely vested in possession or enjoyment prior to said July first, nineteen hundred and two.”
As the personal estate remaining at the end of the year after the payment of debts and charges and costs of administration did not come into the actual possession or enjoyment of the two heirs entitled until after July 1, 1902, the amount they were to receive was uncertain for and during the time the administrator was in charge. Before that date they could not demand, nor were they entitled to receive in possession, any part of the inheritance under the law which kept the administrator in charge. Certainly there was nothing actually vested in these heirs until after the debts were provided for and the legitimate costs and expenses of the administration were ascertained and discharged. None of these things occurred prior to July 1,1902.
The question, then, is not whether the distributive interests were taxable under the law, but whether these interests upon which the taxes were levied were contingent beneficial *419 interests not coming into possession or enjoyment of the parties entitled to them and should be refunded.
The court is of opinion that these beneficial interests in the estate to which the distributees were entitled were technically vested at the date of the intestate’s death by relation back to the. date of the death of the intestate, inasmuch as the distributees’ interests came by descent from the intestate and not from the administrator who was the personal representative.
But the authorities indicate that the language of the refunding statute must be taken in a broader sense and as referring to the time when the beneficial interests were received, or were capable of being received, into actual and absolute possession or enjoyment, and not referring necessarily to the strict legal character of the interest. The statute qualifies the words “ absolutely vested ” with the further words “in possession or enjoyment,” thereby defining the nature of the vested estate prior to the refunding act. The courts have said that the tax is leviable at the time the rate could be ascertained. The rate of the tax assessable could only be determined after the debts and legitimate incidents of the administration of the estate became known. In the collection of debts due an estate the administrator may incur expenses, chargeable against the assets in his'hands, and in resisting claims interposed against the estate expenses and costs may be incurred, and there are, of course, certain costs and legal expenses attaching to an administration. When these are known and deducted from the whole amount of the assets the distributive share of each distributee can then only be known and the rate of the death duty be fixed. Until that time the “ beneficial interest ” was necessarily contingent in that sense which relates tó the amount of it, and consequently the rate of tax in the present instance was' uncertain until the beneficial interest could be paid. If the tax could only be levied at the time the dis-tributees receive, or could rightfully demand possession or enjoyment, it must follow here that these distributive shares were contingent beneficial interests which did not come into possession or enjoyment prior to July 1,1902.
*420 The amendatory act of 1901, it was said in Vanderbilt v. Eidman, 196 U. S., 498, enlarged the act of 1898 so as to cause that act to embrace subjects of taxation which were not included prior to the amendment. The amendatory act contained new provisions not expressly found in the original act, such as the proviso- at the close of section 30 of the original act. By the proviso at the close of section 30 the Supreme Court, in construing the following language, to wit: “Any tax paid under the provisions of sections 29 and 30 shall be deducted from the particular legacy or distributive share on account of which the sum is charged,” said it was a provision plainly importing a practically contemporaneous right to receive the legacy or distributive share and one which would be impracticable of execution if the tax was to be assessed and collected before the beneficiary and the rate of the tax could certainly be ascertained.
In the case of Hertz v. Woodman, 218 U. S., 205, the court, following what was said in the Vanderbilt case, declared that the tax or- duty did not attach to legacies or distributive shares until the right of succession became an absolute right of “immediate possession or enjoyment,” thus repeating the language of the statute in its literal terms.
Where the right to tax is uncertain, indefinite, and doubtful the public right ought to be subordinated to the claim of exemption for the private right. Assuredly, the right to tax should be so clear as to avoid the forfeiture of any part of an estate. Taxes illegally collected are nothing more nor less than forfeiture to the extent of the illegal exaction.
Everything considered, we think the claimant is entitled to recover.
The law imposing the tax did not operate to fasten at the moment the right of succession passed by death the liability on the amount of the distributive shares that the heirs subsequently received, not only because of the difficulty of fixing the rate before the estate was settled, but because the language of the refunding act is explicit in its terms. In some cases the uncertainty in fixing the rate would make the effort well-nigh impossible. In the present instance defendants recognized the uncertainty and impossibility of col *421 lecting anything at the outset by not attempting to make the levy until the net estate was distributed to those entitled to receive it.
It is ordered that claimants have and recover of and from the United States the sum of three thousand two hundred ninety dollars and twelve cents ($8,290.12).